1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                     FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   LORI BELTRAN, et al.,                      No.  2:23-cv-01670-DC-CKD

12                   Plaintiffs,

13          v.                                   ORDER GRANTING DEFENDANTS'
                                                 MOTION TO DISMISS
14   DOCTORS MEDICAL CENTER OF
     MODESTO, et al.,                            (Doc. No. 29)
15
16                   Defendants.

17          This matter is before the court on Defendants' motion to dismiss Plaintiffs' class action

18   complaint. (Doc. No. 29.) Pursuant to Local Rule 230(g), the pending motion was taken under

19   submission to be decided on the papers. (Doc. No. 33.) For the reasons explained below, the court

20   will grant Defendants' motion to dismiss.

21                                        **BACKGROUND**

22          On August 10, 2023, Plaintiffs Lori Beltran, Brittany Matus, Preston Meisner, Paul

23   Blumberg, and Mark Mehring (collectively, "Plaintiffs") filed a class action complaint against

24   Defendants Doctors Medical Center of Modesto ("DMC") and Tenet Health ("Tenet")

25   (collectively, "Defendants") for allegedly intercepting and transmitting their protected health

26   information ("PHI") and personally identifiable information ("PII") to Meta Platforms, Inc.

27   /////

28   /////

                                                 1

("Meta"), formerly known as Facebook,[1] without their knowledge or consent.[2] (Doc. No. 1 at 1–5.) Plaintiffs allege Defendants transmitted their PHI and PII to Meta via a hidden tracking tool known as Meta Pixel ("Pixel"), that was installed on Defendant DMC's website at https://www.dmc-modesto.com/ ("Website"). (*Id.* at ¶¶ 1, 6, 15, 66.)

Plaintiffs bring five causes of action against Defendants: (1) invasion of privacy – intrusion upon seclusion under California common law; (2) invasion of privacy under the California Constitution, Art. I § 1; (3) violation of the California Confidentiality of Medical Information Act ("CMIA"), California Civil Code §§ 56.06 *et seq.*; (4) violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code §§ 630 *et seq.*; and (5) breach of implied contract. (*Id.* at 40–60.)

Plaintiffs bring this data privacy action against Defendants on behalf of themselves, a "nationwide class," and a "California subclass." (*Id.* at ¶ 162.) The "nationwide class" is defined as "[a]ll natural persons in the United States whose PHI was collected through [Meta's] Pixel through the Website." (*Id.*) The "California subclass" is defined as "[a]ll natural persons residing in California whose PHI was collected through [Meta] Pixel through the Website." (*Id.*) Plaintiffs' common law claims for invasion of privacy and breach of implied contract are brought on behalf of Plaintiffs and the nationwide class. (*Id.* at 43, 60.) Plaintiffs' remaining claims, which arise under the California Constitution and California statutes, are brought on behalf of Plaintiffs and the California subclass. (*Id.* at 47, 50, 57.)

## A.     Factual Background

Plaintiffs allege the following in their complaint. Defendant Tenet is a health system and services platform comprised of three different business units—surgical centers, hospital

---

[1] Plaintiffs refer to Meta as both "Meta" and "Facebook" throughout their complaint. For clarity in this order, the court uses "Meta" to refer to the corporation and "Facebook" to refer only to Meta's social media platform.

[2] Plaintiffs also named Meta as a defendant in this action, but on October 12, 2023, the court severed and transferred all claims against Defendant Meta to the Northern District of California so those claims could be related to the pending litigation *In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-3580-WHO (N.D. Cal. 2022). (Doc. No. 25.) Defendant Meta was therefore terminated from this action on October 12, 2023.

1    operations, and healthcare-focused customer service and revenue management. (Doc. No. 1 at

2    ¶ 31.) Defendant DMC is a full-service, comprehensive healthcare facility in Modesto, California.

3    (*Id.* at ¶ 30.) Defendant DMC is the largest hospital between the California cities of Stockton and

4    Fresno, admits more than 22,000 patients annually, and treats more than 100,000 emergency

5    patients each year. (*Id.*)

6        Defendant DMC maintains a public-facing Website where prospective and current

7    patients can "search for information related to their health conditions, hospital locations and

8    doctors." (*Id.* at ¶¶ 1, 30.) Specifically, the Website includes a "search bar" that allows users to

9    search for information about medical conditions, such as "cancer," "diabetes," or "pregnancy

10   care." (*Id.* at ¶¶ 6–7, 13, 104–05.) The Website also includes a "Find a Doctor" webpage that

11   allows users to search for doctors by specialty and location. (*Id.* at ¶¶ 6–7, 97–99.)

12           1.    Defendants' Use of Meta Pixel

13       Defendants embedded Pixel, a "snippet of computer code," on the Website. (*Id.* at ¶¶ 6–

14   7.) When a user accesses a webpage containing Pixel on the Website, Pixel tracks the actions

15   taken by the user (i.e., clicking a button or searching a term) and transmits that data to Meta. (*Id.*

16   at ¶¶ 13, 75, 91-110.) Pixel was developed by Meta "as an innovative solution for reporting and

17   optimizing conversions (clicks to purchases), audience building, and gaining valuable insights

18   into website usage." (*Id.* at ¶ 67.) Pixel enables "Defendants to analyze user experiences and

19   behavior on the Website to assess the Website's traffic and functionality," and aids Defendants in

20   targeting Website users with advertisements and "measuring how well those advertisements are

21   working." (*Id.* at ¶ 10.)

22       Pixel functions by monitoring for "events" and transmitting data directly to Meta in real-

23   time when an "event" occurs. (*Id.* at ¶¶ 7, 68, 75, 91.) On the Website, a Pixel "event" is triggered

24   when a user searches for information related to health conditions using the "search bar," or

25   searches for doctors by specialty and location on the "Find a Doctor" webpage. (*Id.* at ¶¶ 6–7, 97–

26   110.) The data transmitted to Meta when a Pixel "event" is triggered consists of a "full-string

27   detailed URL, which includes the name of the website, the web pages the [user] viewed, the name

28   of the doctor a [user] is considering, and search terms entered by the [user]." (*Id.* at ¶ 109.) Meta

3

also receives the Website user's PII, including their internet protocol (IP) address, name, email, and phone number. (*Id.* at ¶ 74.) If a Website user is signed into Facebook or has previously signed into Facebook within the past year using the same browser that was used to access the Website, Meta also receives the Website user's Facebook ID ("FID"). (*Id.* at ¶¶ 6–8, 87.) Data on the Website user's activity and FID is sent to Meta as "one data point," allowing Meta to "link" the user's interactions with the Website to their Facebook profile. (*Id.* at ¶¶ 8, 101, 104.)

    2.    Allegations Specific to Plaintiffs

Plaintiffs are residents of California who used the Website to search for information about health conditions, symptoms, and doctors. (*Id.* at ¶¶ 25–29.) Plaintiffs are also Facebook users. (*Id.*) Plaintiffs allege that when they used the Website, information regarding their interaction with the Website was intercepted and transmitted to Meta via Pixel without their consent, alongside their FIDs. (*Id.* at ¶¶ 6, 25–29, 126–27.) According to Plaintiffs, the information transmitted to Meta regarding their interaction with the Website included their PHI and PII. (*Id.* at ¶¶ 6, 112, 119.)

Specifically, Plaintiffs allege the following individual interactions with the Website:

    *a.    Plaintiff Lori Beltran*

Plaintiff Beltran began visiting the Website in or around 2022 "to search for information related to health conditions or suspected health conditions, and to search for doctors and services to treat actual or potential medical conditions." (*Id.* at ¶ 25.) Plaintiff Beltran also used the "Website's search function . . . to search for information related to symptoms or conditions she was experiencing, as recently as November 2022." (*Id.*) Plaintiff Beltran has been a Facebook user since approximately 2006. (*Id.*) While utilizing the Website, Plaintiff Beltran was signed into her Facebook profile or had signed into her Facebook profile in the same browser within the past year of using the Website. (*Id.*)

    *b.    Plaintiff Brittany Matus*

Plaintiff Matus began visiting the Website in or around 2022 "to search for information related to health conditions or suspected health conditions, and to search for doctors and services to treat actual or potential medical conditions." (*Id.* at ¶ 26.) Plaintiff Matus also used the

"Website's search function . . . to search for information related to symptoms or conditions she was experiencing, as recently as November 2022." (*Id.*) Plaintiff Matus has been a Facebook user since approximately 2009. (*Id.*) While utilizing the Website, Plaintiff Matus was signed into her Facebook profile or had signed into her Facebook profile in the same browser within the past year of using the Website. (*Id.*)

### c.    *Plaintiff Preston Meisner*

Plaintiff Miesner began visiting the Website in or around 2022 "to search for information related to health conditions or suspected health conditions, and to search for doctors and services to treat actual or potential medical conditions." (*Id.* at ¶ 27.) Plaintiff Miesner also used the "Website's search function . . . to search for information related to symptoms or conditions she [sic] was experiencing, as recently as July 2023." (*Id.*) Plaintiff Miesner has been a Facebook user since approximately 2008. (*Id.*) While utilizing the Website, Plaintiff Miesner was signed into his Facebook profile, or had signed into his Facebook profile in the same browser within the past year of using the Website. (*Id.*)

### d.    *Plaintiff Paul Blumberg*

Plaintiff Blumberg began visiting the Website in or around 2022 "to search for doctors and services to treat actual or potential medical conditions as recently as May 2023." (*Id.* at ¶ 28.) Plaintiff Paul Blumberg has been a Facebook user for "at least the last several years." (*Id.*) While utilizing the Website, Plaintiff Blumberg was signed into his Facebook profile or had signed into his Facebook profile in the same browser within the past year of using the Website. (*Id.*)

### e.    *Plaintiff Mark Mehring*

Plaintiff Mehring began visiting the Website in or around 2015 "to search for information related to health conditions or suspected health conditions." (*Id.* at ¶ 29.) Plaintiff Mehring also used the "Website's search function . . . to search for information related testing [sic] he had scheduled for a health condition as recently as March and April of 2023." (*Id.*) Plaintiff Mehring has been a Facebook user since approximately 2006. (*Id.*) While utilizing the Website, Plaintiff Mehring was signed into his Facebook profile or had signed into his Facebook profile in the same browser within the past year of using the Website. (*Id.*)

1  **B.    Procedural Background**

2        On October 3, 2023, the court issued an order relating this action to two other actions

3  pending in this district: (1) *Harrill v. Emanuel Medical Center, et al.*, No. 2:23-cv-01672-DC-

4  CKD, and (2) *Doe v. Tenet Healthcare Corp., et al*., No. 1:23-cv-01106-DC-CKD.

5        On October 18, 2023, Defendants filed the pending motion to dismiss Plaintiffs' claims

6  pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief

7  can be granted. (Doc. No. 29.) On June 28, 2024, Defendants filed a notice of supplemental

8  authority in support of their motion to dismiss. (Doc. No. 41.) On July 5, 2024, Plaintiffs filed an

9  opposition to the pending motion. (Doc. No. 42.) On July 19, 2024, Defendants filed their reply

10  thereto. (Doc. No. 46.)

11                              **LEGAL STANDARD**

12        A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to

13  the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732

14  (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a

15  cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."

16  *Somers v. Apple, Inc*., 729 F.3d 953, 959 (9th Cir. 2013). In determining whether a complaint

17  states a claim upon which relief can be granted, the court accepts as true the allegations in the

18  complaint and construes the allegations in the light most favorable to the plaintiff. *Manzarek v. St.*

19  *Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court is not

20  required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact,

21  or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

22  (citation omitted).

23        Under Federal Rule of Civil Procedure Rule 8(a), a complaint must include "a short and

24  plain statement of the claim showing that the pleader is entitled to relief," in order to "give the

25  defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*

26  *v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must allege enough facts to state a claim to

27  relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff

28  pleads factual content that allows the court to draw the reasonable inference that the defendant is

1    liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility

2    standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

3    that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). If a claim is

4    dismissed for failure to comply with these requirements, "[l]eave to amend should be granted

5    unless the district court 'determines that the pleading could not possibly be cured by the

6    allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009)

7    (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

8                                          **ANALYSIS**

9            Defendants move to dismiss all of Plaintiffs' claims brought against them. (Doc. No. 29.)

10    Defendants contend that Plaintiffs' complaint should be dismissed because it (1) fails to allege

11    facts sufficient to support a cognizable legal theory, (2) is deficient with respect to each claim,

12    and (3) is wholly or partly time-barred by the applicable statute of limitations. (*Id.*) The court

13    addresses each argument in turn.

14    **A.    Allegations Regarding the Disclosure of Plaintiffs' Protected Health Information**

15            As an initial matter, Defendants move to dismiss Plaintiffs' complaint in its entirety based

16    on Plaintiffs' failure to allege facts sufficient to support a cognizable legal theory. (Doc. No. 29 at

17    11–12.) The overarching theory underlying all of Plaintiffs' claims is that Defendants violated

18    Plaintiffs' privacy rights by collecting and transmitting their PHI and PII from the Website to

19    Meta via Pixel, without their knowledge or consent. (Doc. No. 1 at 1–5.) Defendants argue

20    Plaintiffs' theory is conclusory because Plaintiffs' complaint does not indicate "what information

21    [Plaintiffs] entered [on the Website] and what information was shared with [Meta]." (Doc. No. 29

22    at 12.) Specifically, Defendants assert Plaintiffs fail to allege "what information regarding their

23    'health conditions or suspected health conditions' they supposedly searched for on the Website,

24    or what symptoms or conditions they were allegedly experiencing." (*Id.* at 9.) In Defendants'

25    view, Plaintiffs merely "conclude that [the information they entered] *was* health information."

26    (Doc. No. 46 at 3.)

27            In their opposition to the pending motion, Plaintiffs argue they have alleged facts allowing

28    the court to draw a reasonable inference that Defendants are liable for the alleged misconduct.

                                          7

1    (Doc. No. 42 at 10.) Namely, "that [Plaintiffs used] Defendants' Website to search for

2    information related to symptoms or conditions they were experiencing and to schedule treatment

3    for those actual or potential medical conditions." (*Id.*) (citing Doc. No. 1 at ¶¶ 25–29.)

4        The court finds the allegations in Plaintiffs' complaint deficient. Plaintiffs do not identify

5    with specificity what information they provided to Defendants via their browsing activity on the

6    Website and thus what information was subsequently transmitted to Meta. Although Plaintiffs'

7    complaint spans over fifty pages, only two pages are dedicated to detailing Plaintiffs' interactions

8    with Defendants' Website. (Doc. No. 1 at ¶¶ 25–29.) Plaintiffs vaguely allege that they used the

9    Website to search for information related to "actual or potential" health conditions. (*Id.*) In their

10   allegations, Plaintiffs do not describe the types of searches they conducted or the webpages they

11   viewed, even though their browsing activity on the Website forms the basis for their assertion that

12   their information was purportedly shared with Meta. (*See id.* at ¶¶ 6-7, 104.)

13       For instance, Plaintiffs' complaint provides examples of health conditions Website users

14   may search for, such as "diabetes," and searches for doctors based on specialty, such as

15   "psychiatry," but Plaintiffs do not specify the types of health conditions and doctors Plaintiffs

16   actually searched for on the Website. (*Id.* at ¶¶ 104–05.) Similarly, Plaintiffs' complaint describes

17   how Pixel transmits information to Meta when Website users visit the "Find a Doctor" webpage,

18   but Plaintiffs do not allege that they visited the "Find a Doctor" webpage. (*Id.* at ¶¶ 99–105.)

19   Thus, Plaintiffs' allegations of examples are insufficient to support their theory that Defendants

20   violated their privacy rights by collecting and transmitting their information to Meta. *See Cousin*

21   *v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) ("*Cousin I*") (finding the

22   plaintiffs' complaint lacked sufficient factual support because it only provided hypothetical

23   examples and failed to specify what information plaintiffs provided defendants through their

24   browsing history).

25       Further, Plaintiffs have not alleged that their browsing history on the Website related to

26   the provision of healthcare or patient status, such that Defendants' disclosure of their browsing

27   history to Meta constituted the disclosure of their PHI. The "disclosure of browsing activity on a

28   publicly available website that does not relate to 'the past, present, or future physical or mental

1    health or condition of an individual is not actionable.'" *Nienaber v. Overlake Hosp. Med. Ctr.*,

2    733 F. Supp. 3d 1072, 1084 (W.D. Wash. 2024). Indeed, "[a]n internet user might research

3    medical information for reasons unrelated to the user's own health conditions." *R.C. v. Walgreen*

4    *Co.*, 733 F. Supp. 3d 876, 893 (C.D. Cal. 2024) (noting courts have precluded "claims for public

5    browsing activities that do not reveal personal medical information"); *see also Smith v. Facebook,*

6    *Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)

7    ("search results related to the phrase 'intestine transplant'" constituted "general health

8    information . . . accessible to the public at large," not "protected health information"). Thus, the

9    collection and transmission of information from "unauthenticated webpages (*i.e.*, pages that do

10   not require a user to log in to access the website)" is "only actionable where the information

11   disclosed either (1) 'demonstrates that the plaintiff's interactions plausibly relate to the provision

12   of healthcare,' or (2) 'connects a particular user to a particular healthcare provider' or otherwise

13   identifies patient status, which is protected health information." *Nienaber v. Overlake Hosp. Med.*

14   *Ctr.*, No. 2:23-cv-01159-TL, 2025 WL 692097, at *4 (W.D. Wash. Mar. 4, 2025) (citing *Cousin*

15   *v. Sharp Healthcare*, 702 F. Supp. 3d 967 (S.D. Cal. 2023) ("*Cousin II*")).

16           *Cousin I* is instructive on this point. In *Cousin I*, plaintiffs alleged that they used

17   defendant's public website to "research . . . doctors," "look for providers," and "search for

18   medical specialists." *Cousin I*, 681 F. Supp. 3d at 1123. Plaintiffs claimed that by sharing this

19   data with Meta through Pixel, defendant allowed Meta to collect their sensitive medical

20   information in violation of their privacy rights. *Id.* The district court determined that the

21   collection of data regarding the plaintiffs' browsing activity was "not considered '[p]rotected

22   [h]ealth [i]nformation' because 'nothing about [the] information relate[d] specifically to

23   [p]laintiffs' health.'" *Id.* (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal.

24   2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)). The court in *Cousin I* therefore found the plaintiffs

25   could not maintain their privacy claims "based upon the theory that [d]efendant's sharing of their

26   browsing activity, collected on its publicly facing website, [was] a disclosure of their sensitive

27   medical information." *Id.* at 1124. As in *Cousin I*, here Plaintiffs have not alleged sufficient facts

28   to demonstrate that their browsing activity on the Website was related to the provision of

1    healthcare, as opposed to "general health information [regarding conditions, symptoms, and

2    doctors] accessible to the public at large." *Smith*, 262 F. Supp. 3d at 954–55.[3]

3          Finally, besides generally browsing for information on health conditions, symptoms, and

4    doctors on Defendants' Website, Plaintiffs do not allege that they engaged in any other activity

5    from which an inference could be drawn that their PHI was disclosed. Indeed, Plaintiffs do not

6    allege using Defendants' Website to schedule an appointment, call a doctor's office, refill a

7    prescription, view test results, review notes from an appointment, or access a patient portal—

8    types of activity that courts have found to be sufficient to demonstrate disclosure of PHI. *See e.g.*,

9    *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 893 (C.D. Cal. 2024) (noting that plaintiffs alleged

10   "more than merely viewing generic medical content on a publicly facing website" where they

11   alleged purchasing "specific products to treat specific health conditions"); *B.K. v. Desert Care*

12   *Network*, No. 2:23-cv-05021-SPG-PD, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (finding

13   the plaintiffs' privacy claims based on the disclosure of personal medical information to be

14   sufficiently stated where plaintiffs alleged they used defendants' website and patient portal to

15   schedule appointments, refill prescriptions, and view test results and appointment notes).

16         For these reasons, and because all of Plaintiffs' claims are predicated on their theory that

17   Defendants violated Plaintiffs' privacy rights by collecting and transmitting their PHI to Meta via

18   Pixel, the court will grant Defendants' motion to dismiss Plaintiffs' complaint in its entirety.

19   However, because allegations of additional facts could cure this pleading deficiency as to

20   Plaintiffs' legal theory, the court will grant Plaintiffs leave to amend.

21         Recognizing that providing guidance as to other pleading deficiencies will enable

22

23   [3] In their opposition to the pending motion, Plaintiffs argue their allegations are more analogous
     to the facts alleged in *Cousin II*, rather than *Cousin I*. (Doc. No. 42 at 10–11.) The court
24   disagrees. In *Cousin II*, the plaintiffs' claims survived dismissal because the plaintiffs alleged that
     they searched for a primary care physician by filtering physician search results based on specialty,
25   identified their particular medical conditions, and booked an appointment to obtain treatment.
     *Cousin II*, 702 F. Supp. 3d at 973. The court in *Cousin II* therefore found that the plaintiffs'
26   allegations "relat[ed] to the provision of health care," "convey[ed] information about a present
     medical condition," and involved "the provision of medical care covered by [the Health Insurance
27   Portability and Accountability Act ('HIPAA')]." *Id.* Here, in contrast, Plaintiffs fail to specify at a
     minimum, the types of doctors or medical conditions they searched for on the Website.
28

1    Plaintiffs to address those deficiencies as well in an amended complaint, the court proceeds to

2    addresses the sufficiency of Plaintiffs' allegations as to each claim below, followed by a

3    discussion of the statutes of limitations applicable to Plaintiffs' claims.

4    **B.    Invasion of Privacy Under Common Law and the California Constitution**

5              Plaintiffs bring claims for invasion of privacy on behalf of themselves and the nationwide

6    class. (Doc. No. 1 at 43–47.) To state a claim for invasion of privacy under California common

7    law, Plaintiffs must show "(1) intrusion into a private place, conversation or matter, (2) in a

8    manner highly offensive to a reasonable person." *Shulman v. Grp. W Prods., Inc*., 18 Cal. 4th

9    200, 231 (1998), *as modified on denial of reh'g* (July 29, 1998). A claim for invasion of privacy

10   under the California Constitution involves similar elements. Plaintiffs must plead that (1) they

11   "possess a legally protected privacy interest," (2) they maintain a reasonable expectation of

12   privacy, and (3) "the intrusion is so serious in 'nature, scope, and actual or potential impact as to

13   constitute an egregious breach of the social norms.'" *Hernandez v. Hillsides*, 47 Cal. 4th 272, 287

14   (2009). "Because of the similarity of [these] tests, courts consider [these] claims together and ask

15   whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly

16   offensive." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 601 (9th Cir. 2020).

17             "The existence of a reasonable expectation of privacy, given the circumstances of each

18   case, is a mixed question of law and fact." *Id.* at 601. "[C]ourts consider a variety of factors" in

19   determining whether a reasonable expectation of privacy exists, "including the customs, practices,

20   and circumstances surrounding a defendant's particular activities." *Id.* (citation omitted).

21   "Determining whether a defendant's actions were 'highly offensive to a reasonable person'

22   requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the

23   degree and setting of the intrusion, the intruder's motives and objectives, and whether

24   countervailing interests or social norms render the intrusion inoffensive." *Id*. at 606. "While

25   analysis of a reasonable expectation of privacy primarily focuses on the nature of the intrusion,

26   the highly offensive analysis focuses on the degree to which the intrusion is unacceptable as a

27   matter of public policy." *Id.*

28             Defendants move to dismiss Plaintiffs' invasion of privacy claims on the grounds that

1  Plaintiffs fail to plead both a reasonable expectation of privacy and a highly offensive intrusion.

2  (Doc. No. 29 at 13–14.) In their complaint, Plaintiffs allege that they had a reasonable expectation

3  of privacy in their communications with Defendants on the Website because "medical data is

4  sensitive information that must be protected from unauthorized disclosure." (Doc. No. 1 at

5  ¶¶ 187–88, 200–01.) Plaintiffs further allege that Defendants' disclosure of their information "is

6  highly offensive to a reasonable person" because there was no legitimate objective for Defendants

7  to invade Plaintiffs' privacy rights, Defendants did not allow Plaintiffs the ability to control the

8  dissemination of their PHI, the context of the communication "between Plaintiffs . . . and their

9  healthcare providers is highly sensitive," and public policy dictates that "Defendants' actions

10  undermine the relationship between Plaintiffs . . . and their healthcare providers." (*Id.* at ¶¶ 204,

11  216.)

12         The court finds Defendants arguments to be persuasive. Notably, Plaintiffs allege in a

13  conclusory manner that they have a reasonable expectation of privacy in their communications

14  with Defendants on the Website because such communications contain "medical data." (Doc. No.

15  1 at ¶¶ 187–88, 200–01.) However, Plaintiffs' complaint does not allege facts describing any such

16  "medical data." As discussed above, Plaintiffs' allegations regarding their browsing activity are

17  vague. Plaintiffs do not specifically allege that their searches related to the provision of

18  healthcare, patient status, or otherwise included PHI. Thus, the court finds Plaintiffs have not

19  sufficiently alleged a reasonable expectation of privacy in their browsing activity on the Website.

20  *See Desert Care Network*, 2024 WL 1343305, at *9 (noting that invasion of privacy claims

21  centered on "plaintiffs' browsing histories on defendants' public-facing websites" were

22  "dubious").

23         To be clear, Plaintiffs have a reasonable expectation of privacy in their medical

24  information. *Id.* ("Patients' right to privacy in their medical records is 'well-settled.'") (citation

25  omitted). But given the limited factual allegations in Plaintiffs' operative complaint, the court

26  does not find Plaintiffs have sufficiently alleged that their browsing activity on the Website

27  pertained to their own medical information. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d

28  1056, 1064, 1067 (C.D. Cal. 2024) (dismissing privacy claims where plaintiffs "fail[ed] to allege

1    what, if any medical information or medical records were transmitted or disclosed" when they

2    used defendant's website, such that the court could "only interpret that [p]laintiffs used

3    [d]efendants' [w]ebsite for routine medical searches and inquiries"). In order to sufficiently state

4    their invasion of privacy claim, Plaintiffs must "describe the types or categories of sensitive

5    health information that they provided" to Defendants through the Website. *Doe v. Meta*

6    *Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081 (N.D. Cal. 2023). As other courts have explained

7    when dismissing invasion of privacy claims brought against Meta with leave to amend, the

8    plaintiffs may amend to better describe the health information provided to the defendants, and

9    "[t]hat basic amendment (which can be general enough to protect plaintiffs' specific privacy

10   interests) will allow these privacy claims to go forward."[4] *Id.*

11          Finally, Plaintiffs do not allege facts sufficient to establish an "egregious breach of the

12   social norms" that is "highly offensive" because Plaintiffs do not "plead that their medical

13   information was disclosed." *See Eisenhower*, 721 F. Supp. 3d at 1067. "Disclosing a user's

14   browsing history [unrelated to the provision of healthcare or patient status] does not plausibly

15   reach the level of 'highly offensive' conduct [required] under either common law or the

16   California Constitution." *Cousin I*, 681 F. Supp. 3d at 1126 (citing cases); *cf. Walgreen Co.*, 733

17   F. Supp. 3d at 893–94 (finding the allegations that the defendants' disclosure of plaintiffs' private

18   health information included the purchasing of "sensitive health products" related to "specific

19   health conditions" were sufficient to survive a motion to dismiss based on the "highly offensive"

20   element).

21          For these reasons, the court finds Plaintiffs fail to state a cognizable invasion of privacy

22   claim because Plaintiffs have not pleaded a reasonable expectation of privacy or a highly

23

24   [4] To the extent Plaintiffs' disclosure of their activity on the Website could reveal sensitive or
     private information related to their health conditions, symptoms, and doctors, Plaintiff may file a
25   request to redact/seal such details, as appropriate. *See e.g.*, *In re Meta Pixel Healthcare Litig.*, No.
     3:22-cv-3580-WHO (N.D. Cal. 2022) (Doc. No. 185) (redacted consolidated class action
26   complaint alleging privacy claims based on defendants' use of Pixel); *Castillo v. Costco*
     *Wholesale Corp.*, No. 2:23-cv-01548-JHC (W.D. Wash. 2024) (Doc. No. 29) (redacted complaint
27   alleging the defendant installed Pixel to disclose personal health data collected from plaintiffs'
     interactions with the defendant's website).
28

1    offensive intrusion.

2          Therefore, the court will grant Defendants' motion to dismiss Plaintiffs' invasion of

3    privacy claims brought under common law and the California Constitution. Because Plaintiffs

4    may be able to allege additional facts to support this claim, the court will grant Plaintiffs leave to

5    amend.[5]

6    **C.    California Confidentiality of Medical Information Act**

7          Plaintiffs assert a claim for violation of California's CMIA against Defendants on behalf

8    of themselves and the California subclass. (Doc. No. 1 at 50–51.) Under California's CMIA, "[a]

9    provider of health care . . . shall not disclose medical information regarding a patient of the

10   provider of health care . . . without first obtaining an authorization." Cal. Civ. Code § 56.10(a)–

11   (c). If a health care provider "creates, maintains, preserves, stores, abandons, destroys, or disposes

12   of medical information," they "shall do so in a manner that preserves the confidentiality of the

13   information contained therein." Cal. Civ. Code § 56.101(a). A health care provider "who

14   negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical

15   information" is subject to liability under the CMIA. *Id.*

16         The CMIA defines medical information as "any individually identifiable information, in

17   electronic or physical form, in possession of or derived from a provider of health care, health care

18   service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental

19

20   [5] Defendants also move to dismiss Plaintiffs' common law claims for invasion of privacy and
     breach of implied contract to the extent they are brought on behalf of the nationwide class
21   because Plaintiffs' complaint does not specify which states' laws apply to the nationwide class.
     (Doc. Nos. 29 at 20–22; 46 at 9.) Plaintiffs do respond to this argument in their opposition to the
22   pending motion. Instead, Plaintiffs argue that that to the extent their failure to identify which
     states' laws apply warrants dismissal of this class claim, any such dismissal should be without
23   prejudice. (Doc. No. 42 at 25.) Due to variances among state laws, some courts within the Ninth
     Circuit have required a plaintiff to plead which state's common law applies to their class claims,
24   although other courts have noted that there does not appear to be a statutory basis for such a
     pleading requirement. *Desert Care Network*, 2024 WL 1343305, at *3 n.2 (citing *Romero v.*
25   *Flowers Bakeries, LLC,* No. 5:14-cv-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8,
     2016); *Harris v. LSP Prod. Grp., Inc*., No. 2:18-cv-02973-TLN-KJN, 2021 WL 2682045, at *14–
26   15 (E.D. Cal. June 30, 2021)). However, the court notes that by default, a district court sitting in
     diversity jurisdiction is "required to apply the substantive law of the state in which it sits,
27   including choice-of-law rules." *Harmsen v. Smith*, 693 F.2d 932, 946–47 (9th Cir. 1982).

28

                                              14

1  health application information, reproductive or sexual health application information, mental or

2  physical condition, or treatment." Cal. Civ. Code § 56.05(i). "'Individually identifiable' means

3  that the medical information includes or contains any element of personal identifying information

4  sufficient to allow identification of the individual, such as the patient's name, address, electronic

5  mail address, telephone number, or social security number, or other information that, alone or in

6  combination with other publicly available information, reveals the identity of the individual." *Id.*

7  "This definition does not encompass demographic or numeric information that does not reveal

8  medical history, diagnosis, or care." *Eisenhower Med. Ctr. v. Superior Ct.*, 226 Cal. App. 4th 430,

9  435 (2014).

10  　　　Defendants argue Plaintiffs' CMIA claim should be dismissed because Plaintiffs do not

11  allege that Defendants were their "providers of healthcare." (Doc. No. 29 at 15.) Defendants

12  further argue that Plaintiffs allege in conclusory fashion that Defendants transmitted Plaintiffs'

13  "medical information" to Meta using Pixel without any factual support. (*Id.*) In their opposition,

14  Plaintiffs assert they "were patients of Defendants as evidenced by their usage of the Website."

15  (Doc. No. 42 at 16 n. 3) (citing Doc. No. 1 at ¶¶ 25–29). Plaintiffs also argue their searches on the

16  Website for information relating to health conditions, suspected health conditions, and scheduled

17  testing constitutes "medical information" under the CMIA. (*Id.* at 17.)

18  　　　Here too, the court finds Defendants' arguments to be persuasive. Plaintiffs' complaint is

19  devoid of any allegation that Plaintiffs were Defendants' patients when they used the Website, or

20  at any time. Moreover, Plaintiffs' use of the Website alone does not support the inference that

21  Plaintiffs were Defendants' patients because the Website is not exclusively available to

22  Defendants' patients. Indeed, Plaintiffs allege in their complaint that the Website is available to

23  "all persons, users, prospective patients and current patients." (Doc. No. 1 at ¶ 1.) Thus, the court

24  finds that Plaintiffs fail to sufficiently allege that Defendants were their "providers of healthcare,"

25  as required for a CMIA claim.

26  　　　In addition, as previously discussed, Plaintiffs' complaint fails to specify what "medical

27  information" Defendants' transmitted to Meta. Plaintiffs allege that they searched for information

28  concerning health conditions and symptoms on the Website (Doc. No. 1 at ¶¶ 25–29), but do not

1    plead facts sufficient to show that their searches revealed their personal "medical history,

2    diagnosis, or care." *See Eisenhower*, 226 Cal. App. 4th at 435. For this reason, the court finds that

3    Plaintiffs fail to sufficiently allege that Defendants transmitted Plaintiffs' "medical information"

4    to Meta. *See Eisenhower Med. Ctr.*, 721 F. Supp. 3d at 1064 (dismissing a CMIA claim where

5    plaintiffs "fail[ed] to allege what, if any medical information or medical records were transmitted

6    or disclosed" to Meta when plaintiffs used a website embedded with Pixel); *Cousin I*, 681 F.

7    Supp. 3d at 1123, 1128 (dismissing a CMIA claim because plaintiffs' research for doctors on a

8    website embedded with Pixel was "general health information [] accessible to the public at large,"

9    unrelated to plaintiffs' health).

10        Accordingly, the court will grant Defendants' motion to dismiss Plaintiffs' CMIA claim.

11   Because Plaintiffs may be able to allege additional facts to state this claim, the court will grant

12   Plaintiffs leave to amend.

13   **D.    California Invasion of Privacy Act**

14        Plaintiffs bring a claim for a violation of the CIPA against Defendants on behalf of

15   themselves and the California subclass. (Doc. No. 1 at 57–59.) The CIPA "broadly prohibits the

16   interception of wire communications and disclosure of the contents of such intercepted

17   communications." *Tavernetti v. Superior Ct. of San Diego Cnty.*, 22 Cal. 3d 187 (1978). Section

18   631(a) of CIPA creates four avenues for relief:

19            (1) where a person "by means of any machine, instrument, or
20            contrivance, or in any other manner, intentionally taps, or makes any
             unauthorized connection . . . with any telegraph or telephone wire,
21            line, cable, or instrument";

22            (2) where a person "willfully and without consent of all parties to the
             communication, or in any unauthorized manner, reads, or attempts to
23            read, or to learn the contents or meaning of any message, report, or
             communication while the same is in transit";

24            (3) where a person "uses, or attempts to use, in any manner, or for
             any purpose, or to communicate in any way, any information so
25            obtained"; and

26            (4) where a person "aids, agrees with, employs, or conspires with any
             person or persons to unlawfully do, or permit, or cause to be done
27            any of the acts or things mentioned above."

28   *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023).

Plaintiffs invoke the fourth avenue of relief, alleging Defendants violated Section 631(a) of the CIPA because they "aided, agreed with, conspired with, and employed [Meta] to implement the Pixel and to accomplish the wrongful conduct at issue." (Doc. No. 1 at ¶ 267.)

Defendants contend that Plaintiffs' CIPA claim should be dismissed because Plaintiffs (1) fail to allege the "contents" of their communications that were allegedly intercepted; (2) fail to allege their communications were intercepted in transit; and (3) fail to plead "aiding and abetting" with specificity. (Doc. No. 29 at 18.) Because the court finds dismissal of Plaintiffs' CIPA claim is warranted due to their failure to allege Defendants transmitted the "contents" of their communications, the court will not address Defendants' remaining arguments.

A violation of CIPA is analyzed under the same standards applied to a violation of the federal wiretap act, Electronic Communications Privacy Act ("ECPA"), 18 U.S.C § 2510 *et seq. Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022). The ECPA defines the term "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510. "Contents" means "the intended message conveyed by the communication" as opposed to "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). While a URL that includes "basic identification and address information" is not "content," a website "user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication." *Id.* at 1108–09; *see also St. Aubin v. Carbon Health Techs., Inc.*, No. 4:24-cv-00667-JST, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) ("Descriptive URLs that reveal specific information about a user's queries reflect the 'contents' of a communication.").

In their opposition to the pending motion, Plaintiffs argue their queries on the Website constitute "contents" of communications under CIPA. (Doc. No. 42 at 20–21.) Specifically, Plaintiffs allege the "contents" of their communications to Defendants are the "search terms" they typed in the "search bar" and "Find a Doctor" webpage monitored by Pixel, which were sent to Meta as part of a detailed URL. (*Id.*) However, as previously discussed, Plaintiffs' complaint does

17

1    not specify or describe the searches Plaintiffs conducted on the Website. Nor does the complaint

2    allege that Plaintiffs visited the "Find a Doctor" webpage. Thus, the court does not find Plaintiffs'

3    allegations sufficient to plead the "contents" of their communications that were purportedly

4    intercepted by Defendants within the meaning of CIPA. *Cf. St. Aubin*, 2024 WL 4369675, at *4

5    n.4 (plaintiff's allegation that defendant transmitted descriptive URLs was sufficient to allege a

6    CIPA claim where plaintiff's "complaint contain[ed] examples of actual searches, including

7    screenshots"). Consequently, the court finds that Plaintiffs have not stated a cognizable CIPA

8    claim.

9            Thus, the court will grant Defendants' motion to dismiss Plaintiffs' CIPA claim, with

10   leave to amend, because Plaintiffs may be able to allege additional facts to support this claim.

11   **E.        Breach of Implied Contract**

12           Plaintiffs bring a claim for breach of implied contract against Defendants on behalf of

13   themselves and the nationwide class. (Doc. No. 1 at 60.) In California, the elements of a claim for

14   breach of an express or implied contract are the same. *Terpin v. AT&T Mobility, LLC*, No. 2:18-

15   cv-06975-ODW-KS, 2020 WL 883221, at *6 (C.D. Cal. Feb. 24, 2020) (citing *Gomez v. Lincare*,

16   *Inc.*, 173 Cal. App. 4th 508, 525 (2009)). These elements include: "(1) the existence of the

17   contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and

18   (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811,

19   821 (2011). "An implied contract requires that both parties agree to its terms and have a 'meeting

20   of the minds,' but the creation of an implied contract can be manifested by conduct rather than

21   words." *Castillo v. Seagate Tech., LLC*, No. 3:16-cv-01958-RS, 2016 WL 9280242, at *8 (N.D.

22   Cal. Sept. 14, 2016).

23           In their complaint, Plaintiffs allege they "entered into an implied contract with []

24   Defendants when they provided their PHI to [] Defendants in exchange for services, pursuant to

25   which [] Defendants agreed to safeguard their PHI and not disclose such information without

26   consent." (Doc. No. 1 at ¶ 280.) Plaintiffs allege Defendants made "promises to Website users . . .

27   through their [p]rivacy [n]otice," which emphasized the "importance of keeping [Website users']

28   confidential personal health information safe from unauthorized disclosure." (Doc. Nos. 42 at 17;

18

1 at ¶ 3.) Defendants' "[n]otice of [p]rivacy [p]ractices" describes how Defendants "may use and

disclose [PHI] . . . to others . . . 'for purposes of treatment, payment and/or health care

operations,'" but does not indicate Defendants will disclose PHI to Meta. (Doc. No. 1 at ¶ 3.)

Finally, Plaintiffs allege Defendants breached their implied contract by disclosing their PHI to

Meta. (*Id.* at ¶ 282.)

Defendants argue Plaintiffs' claim for breach of implied contract should be dismissed

because Plaintiffs have failed to allege the essential elements of a breach of contract claim. (Doc.

No. 29 at 15–17.) Specifically, Defendants argue that Plaintiffs have not pled the existence of an

implied contract because they "do not allege any facts showing any mutual assent (offer and

acceptance) on the material points of the alleged implied contract." (*Id.* at 15.) Defendants further

argue that Plaintiffs do not allege facts showing Defendants breached the terms of any implied

contract, such as what information Defendants obtained and shared without Plaintiffs' consent.

(*Id.* at 16.) Finally, Defendants assert that Plaintiffs do not allege any damages resulted from

Defendants' purported breach of implied contract. (*Id.* at 17.) Because the court finds Plaintiffs

fail to allege the existence of an implied contract, the court will not address Defendants'

remaining arguments.

Plaintiffs' assertion that an implied contract exists because Plaintiffs provided their PHI to

Defendants in exchange for services is not supported by the pleadings. As the court has already

determined, Plaintiffs' complaint does not allege facts sufficient to support the conclusion that

Plaintiffs' provided their PHI to Defendants. In any event, Plaintiffs' reliance on Defendants'

privacy policy as the basis for an implied contract is misplaced. Plaintiffs do not allege they

reviewed Defendants' privacy policies prior to using the Website. *See e.g.*, *K.L. v. Legacy Health*,

No. 3:23-cv-1886-SI, 2024 WL 4794657, at *8 (D. Or. Nov. 14, 2024) (plaintiff's reference to

defendant's notice of privacy practices "as the source upon which she understood there to be

mutual assent" was misplaced for breach of implied contract claim where "she never allege[d]

that she relied upon or even read the [notice of privacy practices] before engaging [d]efendant's

services"). Moreover, privacy policies "may form the *terms* of an implied contract, [but] they do

not alone serve as an enforceable contract without a separate 'meeting of the minds' between the

1   parties." *Nienaber*, 733 F. Supp. 3d at 1092 (citing *Doe v. Regents of Univ. of Cal.*, 672 F. Supp.

2   3d 813, 821 (2023)). In other words, privacy policies are "not contractual in nature" because they

3   serve to inform patients regarding their rights and the duties imposed on healthcare providers by

4   law. *Id.*

5           Finally, Plaintiffs have not made any allegations regarding consideration received by

6   Defendants for their purported promise to safeguard Plaintiffs' information. "Several courts have

7   specifically found that consideration is required for an implied contract claim regarding data

8   security." *Ortiz v. Perkins & Co*., No. 4:22-cv-03506-KAW, 2022 WL 16637993, at *6 (N.D.

9   Cal. Nov. 2, 2022); *see also Huynh v. Quora, Inc*., No. 5:18-cv-07597-BLF, 2019 WL 11502875,

10  at *10 (N.D. Cal. Dec. 19, 2019) (finding no breach of contract claim where the plaintiffs "ha[d]

11  not shown that they paid anything for the asserted privacy protections"); *C.M. v. MarinHealth*

12  *Med. Grp., Inc*., No. 3:23-cv-04179-WHO, 2024 WL 217841, at *3–4 (N.D. Cal. Jan. 19, 2024)

13  (adequate consideration alleged for breach of implied contract claim where plaintiff alleged he

14  paid for healthcare services and the amount he paid for the services was based in part on

15  defendant's security promises). Rather than alleging any kind of consideration, Plaintiffs allege

16  that supplying Defendants with user data in exchange for services was sufficient to establish an

17  implied in fact contract. (Doc. No. 1 at ¶ 280.) That allegation is insufficient to support a claim

18  for breach of implied contract. *See Nienaber*, 733 F. Supp. 3d at 1092 (allegation that "the

19  provision of user data *alone* to [d]efendant in exchange for services" was insufficient to establish

20  an implied in fact contract). Therefore, the court cannot infer the existence of an implied contract

21  from Plaintiffs' allegations.

22          For these reasons, the court will grant Defendants' motion to dismiss Plaintiffs' breach of

23  implied contract claim. Although the court is skeptical that Plaintiffs will be able to cure the

24  pleading deficiencies identified as to this claim, the court will nevertheless grant Plaintiffs leave

25  to amend this claim.

26  **F.      Statute of Limitations**

27          Defendants contend Plaintiffs' complaint should be dismissed in its entirety because all

28  claims are wholly or partly time-barred by the applicable statute of limitations. (Doc. No. 29 at

20

22.) "A claim may be dismissed as untimely pursuant to a 12(b)(6) motion only when the running of the statute [of limitations] is apparent on the face of the complaint." *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (internal quotation marks and citation omitted). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

Each of Plaintiffs' five claims against Defendants is subject to a statute of limitations, ranging from one to three years. *See* Cal. Civ. Proc. Code § 340 (statute of limitations for a CIPA claim is one year); Cal. Civ. Proc. Code § 335.1 (statute of limitations for an invasion of privacy claims under the California constitution or common law is two years); Cal. Civ. Proc. Code § 339(1) (statute of limitation for breach of implied contract claim is two years); *Ramirez v. Dean Foods Co. of Cal*., No. 8:11-cv-01292-DOC-AN, 2012 WL 3239959, at *8 (C.D. Cal. Aug. 6, 2012) ("There is some controversy as to whether the statute of limitations for [a CMIA] claim is two or three years.").

In their motion, Defendants argue Plaintiffs' complaint should be dismissed because Plaintiffs do not specify when Defendants' purportedly harmful conduct occurred, making it unclear whether Plaintiffs' claims accrued, in whole or in part, outside the applicable statute of limitations periods. (Doc. No. 29 at 22.) Because Plaintiffs' complaint was filed on August 10, 2023, Defendants argue Plaintiffs are "time-barred from bringing (1) any CIPA claim that accrued prior to August 10, 2022; (2) any claims subject to a two-year statute of limitations that accrued prior to August 10, 2021; and (3) any claims subject to a three-year statute of limitations that accrued prior to August 10, 2020." (*Id.* at 22.) In their opposition, Plaintiffs argue they have alleged viable claims within each of the applicable statute of limitations periods by specifying the dates they most recently visited the Website. (Doc. No. 42 at 25–26.)

The court finds Plaintiffs' complaint sufficiently alleges claims within the applicable statute of limitations periods. With the exception of Plaintiff Matus, Plaintiffs allege that they last visited the Website after August 10, 2022, within the applicable statute of limitations periods for

1   all claims.[6] (Doc. No. 1 at ¶¶ 25–29.) Specifically, Plaintiff Beltran visited the Website as

2   recently as November 2022, while Plaintiffs Miesner, Blumberg, and Mehring visited the Website

3   as recently as April, May, and July 2023, respectively. (*Id.* at ¶¶ 25, 27–29.) Although Plaintiffs'

4   complaint does not specify the exact date Plaintiffs first used the Website, beyond the fact that

5   Plaintiffs Beltran, Matus, Blumberg, and Miesner began using the Website in 2022 and Plaintiff

6   Mehring began using the Website in 2015, the complaint "does not indicate on its face that

7   Plaintiffs' interactions ceased before the [statutes of limitations expired]." *See Desert Care*

8   *Network*, 2024 WL 1343305, at *5; *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 625

9   (N.D. Cal. 2021) ("The Ninth Circuit and California Supreme Court have held that separate,

10  recurring invasions of the same right each trigger their own separate statute of limitations.").

11          Thus, because Plaintiffs' complaint does not present a statute of limitations issue that is

12  facially apparent, the court will deny Defendants' motion to dismiss Plaintiffs' claims as time-

13  barred, with the exception of Plaintiff Matus's CIPA claim, which will be dismissed as time-

14  barred.

15                                  **CONCLUSION**

16          For the reasons explained above:

17      1.      Defendants' motion to dismiss (Doc. No. 29) is GRANTED as follows:

18              a.      Plaintiffs' claim for invasion of privacy under California common law is

19                      dismissed with leave to amend;

20              b.      Plaintiffs' claim for invasion of privacy under the California Constitution is

21                      dismissed with leave to amend;

22              c.      Plaintiffs' CMIA claim is dismissed with leave to amend;

23              d.      The CIPA claim brought by Plaintiffs Lori Beltran, Preston Meisner, Paul

24                      Blumberg, and Mark Mehring is dismissed with leave to amend;

---

25  [6] Plaintiffs' complaint alleges Plaintiff Matus visited the Website as recently as November 2022.
26  (Doc. No. 1 at ¶ 26.) In their opposition to the pending motion, Plaintiffs clarify this allegation
    was a typographical error, and Plaintiff Matus' most recent visit to the Website occurred in March
27  2022. (Doc. No. 42 at 26 n. 15.) Plaintiffs acknowledge Plaintiff Matus' CIPA claim is outside
    the statute of limitations. (*Id.*) Accordingly, the court will grant Defendants' motion to dismiss
28  Plaintiff Matus' CIPA claim as time-barred.

e.    The CIPA claim brought by Plaintiff Brittany Matus is dismissed, without leave to amend; and

f.    Plaintiffs' claim for breach of implied contract is dismissed with leave to amend;

2.    Within twenty-one (21) days of the date of entry of this order, Plaintiffs shall file a first amended complaint, or alternatively, file a notice of their intent not to file a first amended complaint; and

3.    Plaintiffs are warned that their failure to comply with this order may result in an order dismissing this case due to their failure to prosecute.

IT IS SO ORDERED.

Dated:    **June 9, 2025**

Dena Coggins
United States District Judge

23